IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Robert Hie,                          :

      Plaintiff,                    :

     v.                            :    Case No. 2:15-cv-1350

Commissioner of Social Security,
                             Magistrate Judge Kemp
      Defendant.                    :

OPINION AND ORDER

I.  Introduction

Plaintiff, Robert Harold Hie, Jr., filed this action seeking review of a decision of the Commissioner of Social Security denying his application for supplemental security income.  That application was filed on March 12, 2012, and alleged that Plaintiff became disabled on December 15, 2008.

After initial administrative denials of his claim, Plaintiff was given a video hearing before an Administrative Law Judge on May 28, 2013.  In a decision dated July 5, 2013, the ALJ denied benefits.  That became the Commissioner's final decision on February 25, 2015, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on July 6, 2015.  Plaintiff filed a statement of specific errors on September 4, 2015, to which the Commissioner responded on December 9, 2015.  Plaintiff did not file a reply brief, and the case is now ready to decide.

II.  Plaintiff's Testimony at the Administrative Hearing

Mr. Hie was 31 when the administrative hearing was held.  He has an eighth grade education.  He testified to the following at the administrative hearing (see Tr. 56-71).

Plaintiff had worked in the past at fast-food restaurants. He left his last job when he had hip surgery.  He tried to work

after that doing a job at the Fairgrounds but could work only two days.  He lived at home with his wife and four young children.

On most days, Plaintiff watched television and tried to find a comfortable position.  He did not do any household chores.  He had never had a driver's license and did not go grocery shopping or socialize with others.  Family members helped him to dress.

When asked why he could not work, Plaintiff said that he had pain in his back and both legs and that he had been depressed since his mother died in 2011.  His hip pain got worse after his 2010 surgery and he had used a cane since then.  He also experienced outbursts of anger.  Plaintiff saw his doctor every three months for medication.

### III.  The Medical Records

The medical records in this case are found beginning on page 340 of the administrative record.  The Court will separate them into categories which track the issues raised in Plaintiff's statement of specific errors.

### A.  Dr. Phillips' Records

Plaintiff saw his hip surgeon for follow-up after his hip replacement, then saw another doctor and got treatment in the emergency room, primarily for back pain.  He began seeing Dr. Phillips on April 19, 2012.

At the initial visit, Plaintiff's problems were described as "hip pain and depression."  Plaintiff described the pain in his left hip as constant and moderate, but with sharp pain radiating into his back.  On examination, Plaintiff was in no acute distress, but he had tenderness in his lumbar spine and both hips.  He was started on Flexeril and Ibuprofen for pain.  At the next visit, he did not report any radiation of the pain and said he was experiencing limping and stiffness.  The description of his physical problems did not change much from visit to visit, and he continued to describe his pain as moderate.  His pain

medications remained unchanged. (Tr. 425-44).

On March 21, 2013, just about a year after he started to
treat the Plaintiff, Dr. Phillips filled out a form on which he
assessed Plaintiff's physical capabilities. The most significant
conclusions were that Plaintiff could lift and carry at the light
level (20 pounds occasionally and ten pounds frequently), could
stand for only an hour a day, and could sit for only five hours,
no more than two hours at a time. This restriction was
attributed to low back pain. Dr. Phillips also noted that a cane
had been prescribed. He described Plaintiff's pain as moderate
and also said that Plaintiff needed two additional unscheduled
rest periods per day. (Tr. 458-59). Dr. Phillips saw Plaintiff
a few times after that as well, not always treating his back or
hip pain (Plaintiff was also treated for diabetes and
depression), but a note dated May 13, 2013, did show some
treatment for arthritis in the back and hip. At that time,
Plaintiff said his pain level was a "6" and he said that
standing, walking, or cold and rainy weather made it worse. (Tr.
473-74). It should also be noted that a 2010 MRI showed some
abnormalities at the L5-S1 level which were seen as explaining
Plaintiff's pain in that area.

B. <u>Dr. Meyer's Evaluation</u>

Plaintiff was never treated by a mental health provider, but
he was evaluated by Dr. Meyer, a psychologist. She saw him on
May 23, 2012. The only medication he was taking for any mental
health issue was Abilify. Plaintiff said he had been depressed
since his mother died, but records showed complaints of
depression going back several years before that. Plaintiff
described anger issues and lack of energy. He said he was
currently looking for work. His presentation was somewhat
dramatic and his mood and affect were within the normal range.
Plaintiff reported issues with memory and concentration. His

effort on testing was "reduced" and results were "likely invalid." Dr. Meyer rated Plaintiff's symptom GAF at 65 and his functional GAF at 60, and concluded that he suffered from a depressive disorder, antisocial personality disorder, and borderline intellectual functioning. She thought he could remember and follow simple instructions, could maintain attention and concentration in an environment with "increased supervision," could relate to others over a short period of time, and could do repetitive tasks in a low stress work situation. (Tr. 413-24).

### C.   The Non-Examining Sources

Dr. Lewis evaluated Plaintiff's physical residual functional capacity on May 4, 2012. She concluded that he could do sedentary work but had some non-exertional limitations, most significantly a restriction in the use of his left leg to operate foot controls and an inability to sit for more than thirty minutes at a time. (Tr. 115-17). Dr. Manos reiterated those findings. (Tr. 131-33).

Dr. Finnerty expressed an opinion about Plaintiff's mental residual functional capacity. He adopted the findings of an ALJ who adjudicated a prior claim for benefits. That ALJ limited Plaintiff to the performance of simple, routine tasks. (Tr. 89). The next reviewer, Dr. Terry, reached the same result.

### IV.   The Vocational Testimony

Lynne Kaufman was the vocational expert in this case. Her testimony begins at page 72 of the administrative record.

Ms. Kaufman first testified that Plaintiff's past relevant work as a fast food worker was light and unskilled, although Plaintiff performed it in the light to medium range. To the extent that he was also a trainer, that was semi-skilled work. Plaintiff had also been a gas station cashier, a light unskilled job, and an officer cleaner, which was the same.

She was then asked to testify about a hypothetical

-4-

individual who could do light work but could not climb ladders,
ropes, or scaffolds, or work in hazardous environments such as at
heights or around dangerous machinery. The person could
occasionally climb stairs, balance, stoop, kneel, crouch, and
crawl. The person could focus effectively only on routine,
repetitive tasks and could not have more than occasional contact
with the public. Ms. Kaufman said that such a person could do
one of Plaintiff's past jobs, that being office cleaner.

Next, the ALJ asked Ms. Kaufman to assume that the same
hypothetical person was limited to sedentary work. With that
restriction, she said the person could not do any of Plaintiff's
past work, but he or she could be employed as an assembler,
packer, or inspector. She also testified that if a person would
be off task for 20% of the work day, that person could not be
competitively employed, and that would be true for someone with
the described limitations if the person's off-task time exceeded
10% of the work day.

V. <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 36-
46 of the administrative record. The important findings in that
decision are as follows.

The Administrative Law Judge found, first, that Plaintiff
had not engaged in substantial gainful activity since his
application date of March 5, 2012. Going to the next step of the
sequential evaluation process, the ALJ determined that Plaintiff
had multiple severe impairments including hip degenerative
disease status post-replacement surgery, depressive disorder,
borderline intellectual functioning, and antisocial personality
disorder. The ALJ also found that these impairments did not, at
any time, meet or equal the requirements of any section of the
Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix
1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the sedentary exertional level.  He could only occasionally climb stairs, balance, stoop, kneel, crouch, and crawl.  He could not climb ladders and similar devices.  He could not work in hazardous environments and could only do routine and repetitive tasks.  Finally, he could not do tasks requiring more than occasional public contact.

The ALJ next concluded that Plaintiff, with these limitations, could not do any of his past relevant work.  However, Plaintiff could do sedentary jobs like assembler, packer, and inspector.  The ALJ further found that these jobs existed in significant numbers in the local, regional, and national economies.  Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI.  <u>Plaintiff's Statement of Specific Errors</u>

Plaintiff raises four issues in his statement of errors.  The first is that the ALJ did not properly weigh the opinion of Dr. Phillips, the treating physician.  Second, he argues that the ALJ did not properly consider the opinion of the consultative psychological examiner, Dr. Meyer.  Next, he contends that the ALJ did not actually give great weight to the non-examining physicians' opinions even though he purported to do so.  Last, he asserts that the ALJ improperly omitted Plaintiff's use of a cane from his residual functional capacity finding.  Each of these contentions is reviewed under the following legal standard.

<u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"  <u>Richardson v. Perales</u>, 402

-6-

U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  <u>Id</u>.  <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

A.  <u>The Treating Physician Opinion</u>

As noted above, Dr. Phillips expressed an opinion about Plaintiff's residual functional capacity which was at odds with the conclusion reached by the ALJ.  Plaintiff's statement of errors asserts that the ALJ did not follow the proper procedure for evaluating this opinion, and that his rejection of it is not supported by the record.

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once.  20 C.F.R. §404.1527(c); <u>see also Lashley</u> <u>v. Secretary of H.H.S.</u>, 708 F.2d 1048, 1054 (6th Cir. 1983); <u>Estes v. Harris</u>, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981).  However, in evaluating a treating

-7-

physician's opinion, the Commissioner may consider the extent to
which that physician's own objective findings support or
contradict that opinion.  <u>Moon v. Sullivan</u>, 923 F.2d 1175 (6th
Cir. 1990); <u>Loy v. Secretary of HHS</u>, 901 F.2d 1306 (6th Cir.
1990).  The Commissioner may also evaluate other objective
medical evidence, including the results of tests or examinations
performed by non-treating medical sources, and may consider the
claimant's activities of daily living.  <u>Cutlip v. Secretary of</u>
<u>HHS</u>, 25 F.3d 284 (6th Cir. 1994).  No matter how the issue of the
weight to be given to a treating physician's opinion is finally
resolved, the ALJ is required to provide a reasoned explanation
so that both the claimant and a reviewing Court can determine why
the opinion was rejected (if it was) and whether the ALJ
considered only appropriate factors in making that decision.
<u>Wilson v. Comm'r of Social Security</u>, 378 F.3d 541, 544 (6th Cir.
2004).

       Here is what the ALJ said about Dr. Phillips' opinion.  The
ALJ first observed that Plaintiff's own report of debilitating
symptoms was not supported by the notes taken by Dr. Phillips,
which showed normal gait with no joint symptoms or weakness and
did not indicate the need for an assistive device.  (Tr. 43).
Additionally, his care had been conservative in nature.  <u>Id</u>.
Then, turning to the opinion evidence, the ALJ stated:

> The record contains a statement completed by the
> claimant's primary care provide, Dr. Antonio Phillips,
> on March 21, 2013....  Little weight is given to Dr.
> Phillips' statement.  The opinion expressed is quite
> conclusory, providing very little explanation of the
> evidence relied on.  Dr. Phillips endorsed many
> postural, environmental and manipulative restrictions
> that are not well supported in the medical record.  For
> example, the doctor's own  treatment notes mention no
> significant findings on physical examination and
> provide no work restrictions..., and yet in the medical
> source statement he opines (for example) that Mr. Hie
> can only occasionally grasp objects and can rarely push
> or pull, climb, stoop, crouch, kneel or crawl.  He also

-8-

notes that Mr. Hie can only stand a total of one hour a
day, although no significant gait abnormality or
standing restrictions is (sic) suggested in his actual
treatment records.... The doctor apparently relied
quite heavily on the subjective report of symptoms
provided by the claimant, and seemed to uncritically
accept as true most, if not all, of what the claimant
reported.  Yet, as explained elsewhere in this
decision, there exist good reasons for questioning the
reliability of the claimant's subjective complaints.
For these reasons, the undersigned does not find Dr.
Phillips' statement persuasive and affords it little
weight.

(Tr. 44).

Plaintiff is correct that, technically, the ALJ did not
determine that Dr. Phillips' opinion was not adequately supported
by medically acceptable diagnostic techniques or was not
consistent with other medical evidence in the record before
assigning it less than controlling weight.  That is not the
preferred order of decision-making.  See Gayheart v. Comm'r of
Social Security, 710 F.3d 365 (6th Cir. 2013).  However, the
ALJ's decision gives the Court enough information to decide if
the ALJ had (and articulated) good reasons for not giving Dr.
Phillips' opinion controlling weight, and for giving it little
weight, so the purpose of the applicable regulation has been
fulfilled here.  The Court therefore turns to the substantive
issues raised by the ALJ's rejection of Dr. Phillips' opinion.

Despite the Commissioner's effort to defend the ALJ's
rationale, the Court finds it deficient.  The key finding in this
case is that Plaintiff can perform a relatively full range of
sedentary work with restrictions which do not affect his ability
to sit uninterrupted for hours at a time.  Dr. Phillips did not
think he could (he said the limit was two hours at a time, and
that Plaintiff would need two additional unscheduled breaks
during the work day), and the two state agency physicians limited
Plaintiff even more, saying that he could sit for only thirty

-9-

minutes at a time.  The ALJ never mentions these findings, which
are relatively consistent among these three doctors, and which
are not contradicted by any other evidence in the record.  It is
impossible to know if these restrictions would impact the jobs
identified by the vocational expert.  The general observation
that Dr. Phillips did not indicate work restrictions in his
office notes - and there is no reason why he would have done so -
is not a "good reason" to discount his opinion.  Further, it is
hard to understand why the ALJ believed Dr. Phillips accepted
Plaintiff's report of symptoms uncritically; Dr. Phillips
examined Plaintiff on numerous occasions, followed his progress
for over a year before expressing his opinion, and found
Plaintiff to be far more physically able than Plaintiff
testified.  Overall, the ALJ did not give sufficiently well-
supported reasons to reject Dr. Phillips' opinion in its
entirety, especially the portion which related to Plaintiff's
ability to sit for sustained periods - a function that seems
directly related to chronic moderate hip and back pain, both
impairments that are consistently documented in the record.
This failure requires a remand.

### B.  Other Issues

     Plaintiff's other three issues deal with Dr. Meyer's
opinion, the opinions of the state agency physicians, and his use
of a cane.  As to that last contention, both parties recognize
that the use of a cane usually does not erode the base of
sedentary work activity, but since, on remand, the ALJ will be
reassessing Plaintiff's physical residual functional capacity, he
should make findings as to whether the use of a cane is medically
necessary - an issue which he did not directly address in his
decision - and, if so, whether it affects the Plaintiff's ability
to perform any jobs identified by the vocational expert.  As to
Dr. Meyer's opinion, the ALJ had conflicting and more favorable
opinions from the state agency reviewers, and on this record, he

was entitled to make a mental residual functional capacity finding that was, perhaps, slightly less restrictive than that reached by Dr. Meyer (although any differences between the two are not necessarily significant). Her comment about the need for supervision to do simple tasks has to be viewed in light of her skepticism about Plaintiff's performance on mental testing, which was unreliable. Finally, the Court has already highlighted the fact that both state agency physicians found restrictions inconsistent with the ALJ's residual functional capacity finding, and the section of the ALJ's decision discussing those opinions, which is very short (it consists of only five sentences, and concludes by assigning great weight to their opinions, Tr. 44-45), does not discuss the fact that either the sitting restriction or the restriction on use of the left leg - again, something supported by the record - are part of those opinions. The ALJ must, on remand, provide a fuller discussion of these opinions, either indicating why certain portions of them were not accepted or adopting those restrictions and factoring them into the residual functional capacity finding.

## VII.  Decision

Based on the above discussion, Plaintiff's statement of errors (Doc. 13) is sustained to the extent the case is remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion and pursuant to 42 U.S.C. §405(g), sentence four. The Clerk is directed to enter judgment to that effect.


/s/ Terence P. Kemp
United States Magistrate Judge